UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

LUIS FELICIANO,

                             Plaintiff,

                -v-

CITY OF NEW YORK, et al.,

                        Defendants.

------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**_____
**DATE FILED:** 07/15/15

14 Civ. 6751 (PAE)

<u>OPINION & ORDER</u>

**PAUL A. ENGELMAYER, District Judge:**

      Luis Feliciano, a Lieutenant employed by the New York City Sheriff's Department (the "Department"), brings this employment discrimination suit against the City of New York (the "City") and several officials. The lawsuit arises out of the Department's decision, in November 2012, not to promote Feliciano to Under-Sheriff. Feliciano claims a discriminatory failure to promote, a hostile work environment, and retaliation, the last claim based partly on Feliciano's having previously brought discrimination lawsuits against the City. He brings these claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq.* ("NYCHRL"). He also alleges violations of his Fourteenth Amendment rights under 42 U.S.C. §§ 1981 and 1983, and of his First and Fifth Amendment rights under 42 U.S.C. § 1983.

      Defendants now move to dismiss Feliciano's Amended Complaint. For the reasons set forth below, with respect to Feliciano's claims brought against the City under Title VII, the NYSHRL, and the NYCHRL, the Court dismisses the hostile work environment claim, denies

the motion to dismiss the discriminatory failure to promote claim, and narrows but does not

dismiss the retaliation claim.  The Court dismisses all claims brought under §§ 1981 and 1983

against the City and against the individual defendants.

## I.    Background

### A.    Facts[1]

#### 1.    The Parties

Feliciano, a Hispanic man, has worked for the City since 1993.  Dkt. 18 ("Am. Compl."),

¶¶ 16–17.  Since 2001, he has been employed as a Lieutenant in the Sheriff's Department, which

is the office primarily responsible for civil law enforcement in New York City.  *Id.* ¶ 20.  He

holds a bachelor's degree and a juris doctor.  *Id.* ¶ 56.  Feliciano has a clean disciplinary record

and extensive experience in multiple positions within the Department, where he is the second-

most senior Lieutenant.  *Id.* ¶¶ 33, 45.  Before the November 2012 decision not to promote him

that forms the basis of this lawsuit, Feliciano had sued the City for discrimination twice—in

2006 and 2009.  *Id.* ¶¶ 23, 34.  Those lawsuits settled—in 2007 and 2010, respectively.  *Id.*

Defendants are the City of New York and five employees, whom Feliciano sues in their

individual and official capacities: Joseph Fucito, Edgar Domenech, Paul Mulqueen, David

Frankel, and Peter Sammarco.  *Id.* ¶¶ 5–11.  Fucito and Domenech each served as Sheriff of the

Department at different relevant times.  *Id.* ¶¶ 8, 10.  Mulqueen is an Under-Sheriff.  *Id.* ¶ 9.

Frankel is the Commissioner of the New York City Department of Finance, *id.* ¶ 7, to which the

Department reports.  *Id.* ¶ 4.  Sammarco is the Chief of Staff of the Department; he serves as a

panelist when candidates interview for positions in the Department.  *Id.* ¶ 42.

---

[1] These facts are drawn from Feliciano's Amended Complaint.  Dkt. 18.  For the purpose of
resolving the motion to dismiss, the Court assumes all well-pled facts to be true, drawing all
reasonable inferences in favor of the plaintiff, Feliciano.  *See Koch v. Christie's Int'l PLC*, 699
F.3d 141, 145 (2d Cir. 2012).

### 2.    Feliciano's 2006 and 2009 Discrimination Lawsuits Against the City

Because Feliciano's claims include that he was retaliated against for bringing two previous lawsuits against the City, *id.* ¶ 37, the Court briefly recaps those lawsuits.

In 2006, Feliciano was one of several plaintiffs who sued, claiming race discrimination and retaliation by the City and the Department between 2001 and 2005. *Id.* ¶ 23. This lawsuit settled in 2007. *Id.* In 2009, Feliciano sued individually, claiming race discrimination, retaliation, and hostile work environment, based on the Department's failure to promote him to Under-Sheriff in 2008. *Id.* ¶¶ 27–34. Feliciano there alleged that the Sheriff had deliberately changed the method of selection halfway through the promotion process so as to undermine him. *Id.* ¶ 28. That lawsuit settled in 2010. *Id.* ¶ 34.

### 3.    Feliciano's Failure in 2012 to Obtain a Promotion

In November 2012, an opening became available in the Department for the position of Under-Sheriff. *Id.* ¶ 38. Feliciano applied for the position.[2] Two candidates were selected to be interviewed: Mulqueen, who is white, and Julio Lopez, who is Hispanic. *Id.* ¶ 40. Both candidates were less experienced than Feliciano. *Id.* ¶ 43. Mulqueen had been a Lieutenant for two years; Lopez was still in his probationary period as a Lieutenant. *Id.* ¶¶ 47, 52. In December 2012, following his interview, Mulqueen was hired for the position. *Id.* ¶ 53. Feliciano's disciplinary record is superior to Mulqueen's; Mulqueen was once disciplined for improperly supervising a Deputy Sheriff who had mismanaged a real estate sale, *id.* ¶ 47. Feliciano is also more educated than Mulqueen, who does not hold a college degree, *id.* ¶ 56.

---

[2] Feliciano oddly does not explicitly allege that he applied for the position, but the implication is evident from the balance of his Amended Complaint.

After being passed over for promotion, Feliciano complained to Fucito, who then served as Sheriff. *Id.* ¶ 8. In response, Fucito told Feliciano that "if you were selected for an interview people would think it is because you brought two lawsuits." *Id.* ¶ 60.

In early 2013, Feliciano was transferred to the Bronx. *Id.* ¶ 62.

### 4.  Mulqueen's Supervision of Feliciano and Alleged Retaliatory Acts

Mulqueen was, "at all times," Feliciano's supervisor. *Id.* ¶ 9. After he was promoted to Under-Sheriff, Mulqueen changed the procedure by which the Department processed orders of protection that it received.[3] *Id.* ¶ 67. Previously, orders had been processed as they came in, and only orders that could be served within 24 hours were to be served "ASAP"; after his promotion, Mulqueen directed that *all* incoming orders be served "ASAP." *Id.* Feliciano was repeatedly criticized for failing to prioritize incoming orders as Mulqueen had ordered, and this undermined him in supervising his own subordinates. *Id.*

Mulqueen also twice prevented Feliciano from earning overtime. First, on the Monday after Mulqueen learned that Feliciano had filed a complaint about the 2012 promotion process with the Equal Employment Opportunity Commission ("EEOC"), Mulqueen came to the Sheriff's office and stated that "there was no need for [Feliciano] to be there"; this prevented

---

[3] Orders of protection are "issued by the court to limit the behavior of someone who harms or threatens to harm another person. [They are] used to address various types of safety issues, including, but not limited to situations involving domestic violence." New York State Unified Court System, *Obtaining an Order of Protection*, *available at* https://www.nycourts.gov/faq/orderofprotection.shtml (last visited July 15, 2015). The Department's duties include serving orders of protection. NYC Finance, *Serving Process*, *available at* http://www1.nyc.gov/site/finance/Sheriff-courts/Sheriff-serving-legal-papers.page (last visited July 15, 2015). Solely for background and context, the Court takes judicial notice of these facts. *See, e.g.*, *Ross v. Am. Exp. Co.*, 35 F. Supp. 3d 407, 435 n.27 (S.D.N.Y. 2014) ("Courts may take judicial notice of data contained in Government reports."); *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, No. 07 Civ. 10470 (SAS), 2013 WL 6869410, at *4 (S.D.N.Y. Dec. 30, 2013) ("Courts routinely take judicial notice of data on government websites."); *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 432 n.6 (E.D.N.Y. 2011) (taking judicial notice of state agency website).

Feliciano from earning overtime that day.  *Id.* ¶ 64.  Second, on another unspecified occasion, Mulqueen adjusted Feliciano's schedule to an eight-hour shift, preventing him from earning overtime that day.  *Id.* ¶ 66.

### B.   Procedural History

On August 26, 2013, Feliciano filed a charge with the EEOC.  *Id.* ¶ 14.  On May 20, 2014, Feliciano received a right-to-sue notice from the EEOC.  *Id.* ¶ 15.  On August 20, 2014, Feliciano filed his original complaint.  Dkt. 1.  On October 17, 2014, defendants moved to dismiss.  Dkt. 13.  On November 7, 2014, Feliciano filed an Amended Complaint, which is the operative complaint here.  Dkt. 18.

On November 28, 2014, the defendants moved to dismiss the Amended Complaint, Dkt. 28, and submitted a supporting brief, Dkt. 29 ("Def. Br.").  On December 12, 2014, Feliciano filed a brief in opposition.  Dkt. 34 ("Pl. Br.").  On December 19, 2014, the defendants submitted a reply brief.  Dkt. 35 ("Def. Reply Br.").  On June 3, 2015, the Court held argument.

## II.   Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a court must accept as true all factual allegations in the complaint, and draw all inferences in the plaintiff's favor.  *Allaire Corp. v. Okumus*, 433 F.3d

248, 249–50 (2d Cir. 2006); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "[R]ather, the complaint's *factual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citing *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*).

To survive a motion to dismiss, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  Nevertheless, the elements of a prima facie case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible."  *Sommersett v. City of New York*, No. 09 Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

## III.    Discussion

Feliciano brings failure to promote, retaliation, and hostile work environment claims against the City under Title VII, the NYSHRL, and the NYCHRL.  The Court addresses the claims in that sequence.  Feliciano also brings constitutional claims under both 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  The Court addresses those claims as brought first against the individual defendants, and then against the City.[4]

---

[4] Feliciano does not, and cannot, bring claims against the individual defendants under Title VII. *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).  He also has not brought claims against the individual defendants under either the NYSHRL or the NYCHRL.

6

The Court analyzes the claims under Title VII and the NYSHRL together, because the standards for liability under these statutes are the same.[5]  The NYCHRL standard, however, is lower than the federal standard, *see, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 (2d Cir. 2013); therefore, to the extent a particular allegation states a claim under federal law, the parallel claim under the NYCHRL also necessarily states a claim.  Where, however, a Title VII claim is dismissed, a separate analysis is needed to determine whether the parallel NYCHRL allegation states a claim.  *See id.* at 109.

### A.   Failure to Promote

Feliciano brings two claims of a discriminatory failure to promote—one based on race, the other on national origin.[6]  Because these two claims arise from the same facts and are subject to the same legal standard, the Court reviews them together.

To establish a prima facie case of discriminatory failure to promote under Title VII, a plaintiff must demonstrate that: "(1) [he] is a member of a protected class; (2) [he] applied and

---

[5] "[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (citation omitted).

[6] As to both claims, Feliciano alleges, as to his protected characteristic, simply that he is Hispanic.  Am. Compl. ¶ 4.  Most courts that have addressed the issue have concluded that "whether being Hispanic constitutes a race or a national origin category is a semantic distinction," *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998), and that claims under either category can be brought based on a plaintiff's Hispanic origin.  *See, e.g.*, *id.*; *Serrano v. N.Y.S. Dep't of Envtl. Conservation*, No. 12 Civ. 1592 (MAD) (CFH), 2013 WL 6816787, at *4 (N.D.N.Y. Dec. 20, 2013); *Morales v. N.Y.S. Dep't of Labor*, 865 F. Supp. 2d 220, 241 n.6 (N.D.N.Y. 2012); *accord Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003) ("[B]ecause racial categories may overlap significantly with nationality or ethnicity, the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible.") (internal quotation marks and citations omitted) (referring to *Alonzo* with approval).  *But see Casanova v. Gen. Mills Rest., Inc.*, No. 94 Civ. 4386 (FB), 1997 WL 473840, at *1 n.1 (E.D.N.Y. Aug. 15, 1997) (finding that term "Hispanic" refers only to race).

was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for

the position; and (4) the position remained open and the employer continued to seek applicants

having the plaintiff's qualifications." *Estate of Hamilton v. City of New York*, 627 F.3d 50, 55

(2d Cir. 2010) (citation omitted). "[I]n establishing a prima facie case the plaintiff must show

that '[he] applied for an available position for which [he] was qualified, but was rejected under

circumstances giving rise to an inference of unlawful discrimination.'" *Brown v. Coach Stores,*

*Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S.

248, 253 (1981)).

Here, only the last element is at issue. Defendants do not dispute that the Amended

Complaint adequately pleads that Feliciano is a member of a protected class, that he applied for

the position of Under-Sheriff, that he was denied the promotion, and that the City continued to

seek, and eventually selected, an applicant with similar qualifications. The Amended Complaint

also extensively pleads facts as to Feliciano's experience and qualifications for the position. Am.

Compl. ¶¶ 33, 43, 48–50. But defendants dispute whether, as to the facts pled, the decision not

to promote Feliciano occurred under circumstances giving rise to an inference of discrimination.

*See* Def. Br. 9.

Under governing Second Circuit precedent, Feliciano has pled sufficient facts to show an

inference of discrimination. The Circuit has held that when a plaintiff applies for and is denied a

position, the fact that the position was filled by someone outside of the plaintiff's protected class

is itself enough to give rise to such an inference. *See Zimmermann v. Assocs. First Capital*

*Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *see also Soderberg v. Gunther Int'l, Inc.*, 124 F. App'x

30, 31 (2d. Cir. 2005) (summary order) (burden to establish a prima facie case of discrimination

is *de minimis*, and filling of position by employee 20 years junior to plaintiff was enough to

support an inference of age discrimination); *Diaz v. N.Y.C. Transit Auth.*, 98 F. App'x 58, 59 (2d Cir. 2004) (summary order) (finding inference of discrimination when the Transit Authority hired two younger white men instead of the 48-year-old African-American plaintiff); *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 271 (S.D.N.Y. 2013) (finding inference of discrimination when plaintiff expressed interest in a position, which was offered to a candidate outside the plaintiff's protected class a few days later). Here, it is undisputed that Mulqueen, who was selected as Under-Sheriff, is not Hispanic and thus is not in Feliciano's protected class. Given this Circuit's standard, the Amended Complaint, although otherwise barren of factual allegations indicative of discrimination, has pled a prima facie case of discriminatory failure to promote.

Defendants' argument for dismissal is not that there is no inference of discrimination inherent in Mulqueen's promotion over Feliciano, but that any inference of discrimination is negated by the fact that a member of Feliciano's protected class (Lopez) *was* selected for an interview. *See* Def. Br. 10. But on a motion to dismiss, where there has been no discovery into facts that would shed light on defendants' intent, this argument cannot carry the day. Further, "courts have consistently emphasized that the ultimate issue [in Title VII cases] is the reasons for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis in original). Therefore, that another Hispanic was eventually selected for an interview, although potentially probative at trial, is insufficient to defeat Feliciano's pleading at this stage.

The First Circuit's decision in *Chadwick v. WellPoint, Inc.*, 561 F.3d 38 (1st Cir. 2009), illustrates the doctrinal point well. There, the plaintiff—a mother of four children—claimed that her employer failed to promote her based on gender discrimination. *Id.* at 42. She alleged that

she was denied a promotion "because of a sex-based stereotype that women who are mothers, particularly of young children, neglect their jobs in favor of their presumed childcare responsibilities." *Id.* In moving for summary judgment, the defendant-employer pointed out that the employee whom it did promote (over the plaintiff) was also a mother. *Id.* at 42 n.4. But the First Circuit gave no weight to that fact in denying the employer's summary judgment motion. It stated: "[The employer's] assertion that [the promotee] was a mother of two does not receive weight in our assessment of the summary judgment motion for several reasons. First, it is not at all clear that this is relevant for our analysis, as the Supreme Court has emphasized that '[t]he principal focus of [Title VII] is the protection of the individual employee, rather than the protection of the minority group as a whole.'" *Id.* (quoting *Connecticut v. Teal*, 457 U.S. 440, 453–54 (1982)). "In other words," the First Circuit explained, "discrimination against one employee cannot be remedied solely by nondiscrimination against another employee in that same group." *Id.* (citing *Brown*, 257 F.3d at 252).

Defendants correctly note that the First Circuit in *Chadwick* did not categorically hold irrelevant the fact that the successful candidate was a member of the protected class, stating instead that it was "not at all clear" whether that candidate's status was relevant. Def. Reply Br. 3 (quoting *Chadwick*, 561 F.3d at 42 n.4). But the relevance, if any, to that fact in a particular promotion decision cannot be determined on the pleadings. *Chadwick*, in fact, held that the fact that the prevailing applicant was a member of the same class could not be given weight even at the summary judgment stage, following discovery. And the facts pled by Feliciano are even less favorable to the employer than those in *Chadwick* because, unlike in *Chadwick*, the member of the protected group on whom the City relies (Lopez) was *not* ultimately chosen for the position, but was merely the runner-up.

Defendants also note that the Amended Complaint has pled facts that may be read to support plausible non-discriminatory explanations for Feliciano's failure to be promoted, most notably that he, on the merits, was not among the top two candidates and therefore did not obtain a final interview.  Def. Br. 10.  But on a motion to dismiss, where a prima facie case has been pled, the Court cannot find as matter of fact that a defendant's motives were non-discriminatory so as to defeat that inference.  "Whether there existed non-pretextual, non-discriminatory explanations for the defendants' employment decisions . . . is not properly decided on a motion to dismiss for failure to state a claim."  *Green v. District Council 1707*, 600 F. App'x 32, 33 (2d Cir. 2015) (summary order) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230–31 (2d Cir. 2014)).

Because Feliciano has pled a prima facie case of discriminatory failure to promote under Title VII, the motion to dismiss is denied as to his Title VII, NYSHRL, and NYCHRL claims of such a failure against the City.

### B.    Retaliation

To plead a prima facie case of retaliation under Title VII, a complaint must satisfactorily plead these elements: (1) "participation in a protected activity known to the defendant"; (2) "an employment action disadvantaging the plaintiff"; and (3) "a causal connection between the protected activity and the adverse employment action."  *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) (internal quotation marks omitted).  Although the Amended Complaint here is not a model of clarity, it appears to assert four possible acts of retaliation: (1) Feliciano's transfer to the Bronx, (2) excessive supervision of Feliciano by Mulqueen, (3) the denial of overtime by Mulqueen, and (4) the decision not to promote Feliciano to Under-Sheriff in November 2012. Am. Compl. ¶¶ 60, 62, 64, 66.  The Court addresses these acts in turn.

11

### 1.      Transfer to the Bronx

Feliciano alleges that "in retaliation for his complaints and prior lawsuits," he was transferred to the Bronx in early 2013. *Id.* ¶ 62. However, the Amended Complaint falters as to the first and second elements of a Title VII retaliation claim.

The Amended Complaint identifies two instances of protected speech that ostensibly motivated defendants to retaliate against him. *Id.* First, Feliciano argues that he was transferred to the Bronx in retaliation for complaining to Fucito about being passed over for promotion. *Id.* However, as pled, this complaint was not a protected activity. For protest about an employment act to be considered protected activity, the plaintiff must believe in good faith that the underlying employment practice is unlawful. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'g, P.C.*, 716 F.3d 10, 14 (2d. Cir. 2013); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). A failure to promote is unlawful under Title VII when it is based on, *inter alia*, an individual's race or national origin. *See* 42 U.S.C. § 2000e-2. But the Amended Complaint nowhere alleges that Feliciano protested his non-promotion to Fucito because he believed his employer's behavior was unlawful. It alleges only that Feliciano "complained about being passed over for promotion." Am. Compl. ¶ 60. Feliciano does not allege that he believed he had been passed over because of his status as a Hispanic.

In any event, even assuming that the Amended Complaint adequately pled such a belief by Feliciano at the time he complained to Fucito, it fails to plead that this was conveyed to Fucito. "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct protected by Title VII." *Galdieri*, 136 F.3d at 292. Even assuming that Feliciano believed his non-promotion was unlawful, he had to effectively

communicate this belief to Fucito when he complained, as opposed to simply complaining about the outcome of the hiring decision. *See Douglass v. Rochester City Sch. Dist.*, 522 F. App'x 5, 8 (2d Cir. 2013) (summary order) (letter to a human relations officer requesting a change of supervisor without specifically mentioning unlawful mistreatment held not protected activity). The Amended Complaint's anodyne allegation that Feliciano "complained about being passed over for promotion," Am. Compl. ¶ 60, does not suffice to plead that the City or Fucito were on notice of Feliciano's belief that his non-promotion had been the product of discrimination.

The second instance of protected speech that the Amended Complaint identifies as having motivated Feliciano's transfer to the Bronx is the fact that he had earlier filed two discrimination lawsuits against the City. *Id.* ¶ 62. The filing of these lawsuits qualifies as protected activity, *see* 42 U.S.C. § 2000e-3; *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992); *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987), and the City necessarily knew about these lawsuits. But the transfer to the Bronx, as alleged in the Amended Complaint, does not constitute an adverse employment action. A transfer of an employee to a new location can qualify as an adverse employment action when it is "a change in working conditions . . . more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation omitted). As such, even "[a] lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way." *Patrolmen's Benevolent Ass'n of City of N.Y v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002); *see also Lore v. City of Syracuse*, 670 F.3d 127, 170 (2d Cir. 2012) ("The transfer of an employee from an 'elite' position to one that is 'less prestigious . . . with little opportunity for professional growth' is

sufficient to permit a jury to infer that the transfer was a materially adverse employment action.")
(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006)).  The Amended
Complaint does not, however, allege any facts indicating that the transfer to the Bronx adversely
affected Feliciano.  Beyond the conclusory allegation that "in retaliation for his complaints and
prior lawsuits, Plaintiff was transferred to the Bronx in early 2013," Am. Compl. ¶ 62, Feliciano
does not provide any information as to how the transfer impacted him.  Because he does not
allege any difference in pay, responsibilities, prestige, or any other factor that would indicate he
was at all negatively affected, the Court holds that Feliciano has not shown that the transfer to
the Bronx was adverse.

Accordingly, Feliciano's Amended Complaint does not plead sufficient facts to support a
claim under Title VII or the NYSHRL that his 2013 transfer to the Bronx was retaliatory.

Feliciano's NYCHRL claim of retaliatory transfer must be analyzed independently.
*Mihalik*, 715 F.3d at 113.  A prima facie case of retaliation under the NYCHRL requires the
plaintiff to show that "(1) [he] participated in a protected activity known to defendants;
(2) defendants took an action that disadvantaged him; and (3) a causal connection exists between
the protected activity and the adverse action."  *Fletcher v. Dakota, Inc.*, 948 N.Y.S.2d 263, 269
(1st Dep't 2012); *accord Mihalik*, 715 F.3d at 112; *Albunio v. City of New York*, 889 N.Y.S.2d 4,
5–6 (1st Dep't 2009), *aff'd*, 947 N.E.2d 135 (N.Y. 2011).

As with Title VII retaliation, speaking out in opposition to discrimination is a protected
activity under the NYCHRL.  *See* N.Y. City Admin. Code § 8-107-7.  NYCHRL claims must be
reviewed considering the totality of the circumstances, *Mihalik*, 715 F.3d at at 113, and the New
York Court of Appeals has held that an employee can oppose his employer's discrimination
without expressly mentioning discrimination as the source of his discontent.  *See Albunio*, 947

14

N.E.2d at 138 (finding that plaintiff took action opposing employer's discrimination toward a prospective employee even though plaintiff did not specifically mention discrimination as a reason for disapproving of employer's conduct); *Fletcher*, 948 N.Y.S.2d at 271 ("[U]nder the city HRL, a jury may infer from other evidence that a plaintiff's activity is in fact opposition to discrimination even where the plaintiff does not say so in so many words.") (internal quotation marks omitted); *accord Mihalik*, 715 F.3d at 112. Accordingly, Feliciano's failure to explicitly indicate to Fucito that he was complaining about his non-promotion on discrimination grounds does not itself sink his NYCHRL claim of retaliation.

In fact, although Feliciano's allegations as to the first element are thinly pled, they appear to pass muster under the NYCHRL's lenient standard. Drawing all inferences in Feliciano's favor, and giving due attention to the context (Feliciano's filing of previous discrimination lawsuits, including based on a similar failure to promote), Fucito's response suggests that he understood Feliciano's complaint to concern discrimination. It is therefore reasonable to infer that Feliciano was "opposing discrimination" when he complained to Fucito about his non-promotion.

However, Feliciano's claim of retaliatory transfer, as pled, does not make out the second element—a disadvantageous action. To be sure, the NYCHRL's standard for what constitutes disadvantageous conduct is significantly broader than the Title VII standard. The text of the NYCHRL specifies that an alleged retaliatory act "need not result in . . . a materially adverse change in the terms and conditions of employment" in order to be actionable. N.Y. City Admin. Code § 8-107-7. And the Appellate Division, First Department has stated that "no challenged conduct may be deemed nonretaliatory before a determination that a jury could not reasonably conclude from the evidence that such conduct was, in the words of the statute, 'reasonably likely

15

to deter a person from engaging in protected activity.'"  *Williams v. N.Y.C. Housing Auth.*, 872

N.Y.S.2d 27, 34 (1st Dep't 2009).  Here, however, Feliciano has not pled *any* facts that would

allow an inference that he was disadvantaged by his transfer.  Although it is easy to imagine

reasons why a transfer could be disadvantageous—*e.g.*, it might result in a change in title,

responsibilities, or compensation, or a much longer commute, *see Demoret v. Zegarelli*, 451 F.3d

140, 151 (2d Cir. 2006); *Terry v. Ashcroft*, 336 F.3d 128, 146 (2d Cir. 2003)—it would be pure

speculation—rather than fair inference—to assume any of them existed here.  Accordingly,

because the Amended Complaint lacks any allegation supporting a finding of disadvantageous

action, the Court finds that Feliciano has failed to plead enough facts to support a claim of

retaliatory transfer under the NYCHRL.

### 2.    Excessive Scrutiny

Feliciano next claims that Mulqueen retaliated against him by excessively scrutinizing

him in the workplace.  That claim also fails to support a retaliation case under Title VII because,

as pled, there was no *materially* adverse action, as the law requires.  *See White*, 548 U.S. at 68

("We speak of *material* adversity because we believe it is important to separate significant from

trivial harms."); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir.

2011).  The standard for a materially adverse action is whether an act "could . . . have dissuaded

a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination."

*Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006).

The Amended Complaint alleges only that Mulqueen "repeatedly criticized" Feliciano for

not completing protection orders in time.  Am. Compl. ¶ 67.  It contains no further allegations as

to this point.  It is well settled, however, that mere criticism of an employee's work performance

does not rise to the level of an adverse employment action.  *See Chang v. Safe Horizons*, 254 F.

App'x 838, 839 (2d Cir. 2007) (summary order); *Lucenti v. Potter*, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006); *see also Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 479 (2d Cir. 2009) (summary order) ("very unlikely" that alleged close scrutiny, without more, constituted adverse employment action); *Constance v. Pepsi Bottling Co. of N.Y.*, No. 03 Civ. 5009 (CBA) (MDG), 2007 WL 2460688, at *36 n.15 (E.D.N.Y. Aug. 24, 2007) (doubting whether excessive surveillance on the job can constitute adverse employment action); *Dixon v. City of New York*, No. 03 Civ. 343 (DLI) (VVP), 2008 WL 4453201, at *16 (E.D.N.Y. Sept. 30, 2008) (excessive scrutiny, without more, does not constitute adverse employment action).  The Court therefore holds that Feliciano fails to state a claim for retaliation in excessive scrutiny under Title VII and the NYSHRL.

As already noted, Feliciano's NYCHRL claim must be reviewed independently. However, even assuming *arguendo* that that claim meets the more lenient standard of the NYCHRL for disadvantageous action,[7] Feliciano's claim under the NYCHRL also fails because it does not show any causal connection.  The Amended Complaint does not allege what protected activity, if any, Feliciano was being retaliated against for when Mulqueen excessively scrutinized him.  As with his claim of retaliatory transfer to the Bronx, only his complaint to Fucito upon being denied promotion and his past filing of two lawsuits could serve as the protected activity forming the basis for the retaliation.  The facts pled in the Amended Complaint do not show a causal connection between either instance of protected conduct and the alleged retaliatory act.

---

[7] The Second Circuit has stated that "even a single comment may be actionable in the proper context," *Mihalik*, 715 F.3d at 113, and Feliciano complains of several instances of criticism by Mulqueen.  Accepting as true the facts pled, a jury could reasonably find that Mulqueen's scrutiny deterred Feliciano from further opposing his employer's perceived discriminatory practices.

First, to the extent that Feliciano's claim is premised on the protected conduct of complaining to Fucito about the failure to promote him, there is no indication that Mulqueen was aware of that complaint.  And, even assuming that Mulqueen was aware, Feliciano does not point to any direct evidence that would show a causal connection between the comment to Fucito and the excessive scrutiny.  Absent direct evidence of causal connection, Feliciano could, in theory, point to temporal proximity as an indirect indicator of causal connection.  *See Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 987 N.Y.S.2d 338, 343 (1st Dep't 2014).  However, Feliciano does not provide the date of any of the times he was allegedly criticized by Mulqueen, nor does he allege when Mulqueen's change in policies was implemented.  It is therefore impossible for the Court to determine the temporal proximity of the alleged retaliatory acts to the protected conduct.  "Simply stating that the NYCHRL encompasses a broader standard does not absolve [plaintiff] from putting forth evidence tending to show a causal connection between [his protected act] . . . and the alleged retaliatory actions."  *EEOC v. Bloomberg, L.P.*, 967 F. Supp. 2d 816, 862 (S.D.N.Y. 2013); *see also Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) ("The broad remedial purpose of the NYCHRL does not change the requirement for causal connection between the protected activity and the adverse employment action.").

To the extent that Feliciano's NYCHRL claim is based on his filing of two past lawsuits, he again does not point to any direct evidence of causal connection.  Feliciano cannot rely on temporal proximity to show causation because "it is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together."  *Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (citation omitted).  Under both federal and state case law, where no

additional facts are pled, temporal proximity ordinarily requires that the allegedly retaliatory act occur within two months of the plaintiff's protected activity. *Compare Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) (temporal proximity sufficient to support causation when retaliatory act occurred less than a month after protected conduct), *and Kim*, 987 N.Y.S.2d at 343 ("[P]laintiff's termination two months after the second complaint may establish the necessary causal nexus between the protected activity and her discharge.") (citations omitted), *with Stoddard*, 309 F. App'x at 480 (causal connection not adequately pled when protected activity occurred two months before the alleged adverse action), *and O'Reilly v. Consol. Edison Co. of N.Y., Inc.*, 173 F. App'x 20, 22 (2d Cir. 2006) (summary order) (causal connection not adequately pled when protected activity occurred three months before the alleged retaliatory conduct). Here, the alleged retaliatory act occurred years after the protected activity—the lawsuits were filed in 2006 and 2009 and settled in 2007 and 2010, respectively.

Because the Complaint fails to show any causal connection between the protected conduct and the alleged retaliation, Feliciano's claim for excessive scrutiny under the NYCHRL also fails.

### 3.    Denial of Overtime

Feliciano next claims that Mulqueen denied him overtime in retaliation for filing an EEOC charge. Am. Compl. ¶ 63. Filing a complaint with the EEOC is a protected activity. *See* 42 U.S.C. § 2000-e3. But, on the facts pled, the denial of overtime work to Feliciano does not constitute an adverse action under Title VII.

The Amended Complaint alleges that Feliciano was denied overtime work on two days, *see* Am. Compl. ¶¶ 64, 66; as to one of these instances, however, it does not allege that it took place after the protected activity, let alone when, *id.* ¶ 66. The Amended Complaint's well-pled

allegations therefore consist of only one instance of denial of overtime.[8]  Denial of overtime *can*

amount to an adverse employment action.  *See, e.g.*, *Mazyck v. Metro. Transp. Auth.*, 893 F.

Supp. 2d 574, 589 (S.D.N.Y. 2012); *Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 379

(S.D.N.Y. 2002).  But the circumstances in those cases involved repeated denials, not a denial of

overtime on a single day.  Courts are divided as to whether a *single* instance of denial of

overtime constitutes a materially adverse employment action.  *Compare Kohutka v. Town of*

*Hempstead*, 994 F. Supp. 2d 305, 314 (E.D.N.Y. 2014) (allegation that plaintiff was denied

overtime pay, even on one occasion, could be enough to meet the materially adverse standard),

*and Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162–63 (D.C. Cir. 2015) (denial of two days of

overtime, totaling a $850 loss for plaintiff, was a materially adverse action), *with Merritt v.*

*N.Y.C. Transit Auth.*, No. 06 Civ. 5548 (RRM) (LB), 2008 WL 4508258, at*5 (E.D.N.Y. Sept.

30, 2008) (deprivation of overtime of less than two hours held not enough to be an adverse

action), *and Galvan v. Comty. Unit Sch. Dist. No. #300*, 46 F. Supp. 3d 836, 841 (N.D. Ill. 2014)

(in the Seventh Circuit, "[l]ost overtime is a materially adverse employment action only if the

plaintiff shows that the overtime was a 'significant and recurring part of an employee's total

earnings similar to a raise'") (quoting *Lewis v. City of Chicago*, 496 F.3d 645, 653–54 (7th Cir.

2007)).

   On the facts pled here, the one instance in which Feliciano was denied overtime work is

not enough to be material.  Unlike the complaint in *Gordon*, the Amended Complaint is silent as

to the amount or value of overtime lost.  It does not indicate whether the lost opportunity was for

---

[8] The Amended Complaint generically alleges that "Mulqueen purposely deprived Plaintiff of overtime opportunities," Am. Compl. ¶ 63, but this unspecific and conclusory statement does not permit the Court to infer a broad pattern of denial of overtime work.  *See Iqbal*, 556 U.S. at 678 ("[C]omplaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 557).

a few minutes of work, for an hour, or for more.  Feliciano has not pled facts to support that the denial rose above a "minor workplace inconvenience."  *Avillan v. Donahoe*, 483 F. App'x 637, 638 (2d Cir. 2012) (summary order).  The Amended Complaint's sparse allegations do not support that the denial of overtime in this case was sufficient to "dissuade[] a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination," *Kessler*, 461 F.3d at 209.  The Court therefore dismisses Feliciano's Title VII and NYSHRL retaliation claim to the extent it is based on the denial of overtime.

Feliciano's claim of retaliatory denial of overtime under the NYCHRL must be analyzed separately.  While "even a single comment may be actionable under the proper context," *Mihalik*, 715 F.3d at 113, a Complaint still must provide enough facts for "a jury [to be able to] reasonably conclude from the evidence that such conduct was, in the words of the statute, 'reasonably likely to deter a person from engaging in protected activity,'" *Williams*, 872 N.Y.S.2d at 34 (citation omitted).  As explained above, Feliciano fails to identify the amount of time lost as well as the value to Feliciano of the overtime lost.  Nor does the context of the denial by Mulqueen  support finding the alleged retaliatory action disadvantageous.  Feliciano alleges only that Mulqueen "stated that he would supervise and there was no need for Plaintiff to be there."  Am. Compl. ¶ 64.  Absent any other allegations, and mindful that "courts may still dismiss truly insubstantial cases [under the NYCHRL]," *Mihalik*, 715 F.3d at 113 (internal quotation marks omitted), Feliciano's undeveloped allegations fail to state a claim for retaliatory denial of overtime under the NYCHRL.

### 4.     Failure to Promote

The final instance of retaliation alleged in the Amended Complaint is the failure to promote Feliciano in November 2012, which is claimed to have been in retaliation for his 2006

and 2009 lawsuits.  Am. Compl. ¶ 60.  Feliciano's filing of lawsuits claiming discrimination was a protected activity, and Feliciano undisputedly experienced an adverse employment action when he was denied promotion to Under-Sheriff.  The parties dispute, however, whether Feliciano has adequately pled a causal connection between the lawsuits and the failure to promote.

Temporal proximity here provides only limited support for an inference of retaliation because Feliciano's lawsuits were filed at least three years, and were settled at least two years, before the decision not to promote him.  To be sure, courts apply a more lenient standard to temporal proximity when the allegedly retaliatory act was a non-promotion, as opposed to a termination.  That is because while an employer who wishes to fire an employee is apt to do so immediately after the act, "opportunities for retaliation do not necessarily immediately present themselves" in the context of promotion.  *Mandell v. County of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003); *see also Raneri v. McCarey*, 712 F. Supp. 2d 271, 280 (S.D.N.Y. 2010) (finding valid retaliation claim, despite passage of two years following protected activity).  The Amended Complaint here does not allege whether, prior to 2012, there had been intervening opportunities to retaliate against Feliciano for his lawsuits, and if so, how his supervisors responded.  It would present a close question whether the passage of time here, considered alone, would permit a trier of fact to find the decision not to promote Feliciano in 2012 derived from his lawsuits.

The Amended Complaint, however, does allege an additional fact.  It alleges that, in response to Feliciano's complaints about his non-promotion, Fucito, the Sheriff, told Feliciano that "if you were selected for an interview people would think it is because you brought two lawsuits."  Am. Compl. ¶ 60.

In a retaliation case, causation can also be shown "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Galimore*, 641 F. Supp. 2d at

288 (citing *Gordon v. N.Y. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  Here, Feliciano

argues, Fucito's statement is such evidence.  The Court agrees.  To be sure, as defendants note,

Fucito's statement on its face does not explicitly recite a retaliatory motive.  It can be read in

multiple ways.  As defendants note, the statement does not, on its face, admit that Feliciano

merited the promotion over the prevailing applicant (Mulqueen) or the runner-up (Lopez).

Fucito's statement can be read to mean that Feliciano was not given a courtesy interview so as

not to send a message that candidates who filed lawsuits could be given preference in the hiring

process.  As defendants further note, the Amended Complaint is also elliptical about Fucito's

role in the hiring process, and whether his statements reflected any knowledge as to how the

decision not to promote Feliciano was reached.  On the other hand, Fucito was, as alleged, the

Sheriff at the time that Feliciano was not promoted to Under-Sheriff.  Am. Compl. ¶ 8.  And

Fucito's statement does reflect that, notwithstanding the passage of time, Feliciano's two

lawsuits against the City were still remembered among his supervisors.  It supports finding

causal connection here, because, as in *Mandell*, the facts pled "suggest[ed] that negative attitudes

towards [the plaintiff] caused by [his protected conduct] lingered for . . . years."  *Mandell*, 316

F.3d at 383.

Although the question is reasonably close, in light of *Mandell*, the Court holds that the

Amended Complaint has adequately pled causation.  On a motion to dismiss, drawing "all

inferences in the plaintiff's favor," *Allaire Corp.*, 433 F.3d at 249–50, it is reasonable to infer

that Fucito, as the Sheriff, would have knowledge of the reasons behind promotion decisions

made by officials under his supervision, and that his statement bespoke that Feliciano's prior

lawsuits had played some role in the Department's reasons for not promoting him.  *See, e.g.*,

*Ellis v. Knight Transp., Inc.*, No. 11 Civ. 1300 (AWI) (MJS), 2012 WL 6554382, at *3 (E.D.

Cal. Dec. 14, 2012) (reasonable to infer that company's Vice-President of Human Resources, given his position, would know about the reasons for an employee's termination).

The Court accordingly narrows Feliciano's retaliation claim, so as to limit that claim to one of retaliatory failure to promote him based on his having filed two previous discrimination lawsuits.  With the claim thus limited, it is viable as pled.  The Court therefore denies defendants' motion to dismiss Feliciano's Title VII, NYSHRL, and NYCHRL retaliation claims, as limited herein.

### C.   Hostile Work Environment

A hostile work environment claim under Title VII:

> [R]equires a showing [1] that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and [2] that a specific basis exists for imputing the objectionable conduct to the employer.  *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (internal citations and quotation marks omitted).  The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001) (*citing Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).  This test has objective and subjective elements: the misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry*, 115 F.3d at 149 (citation and internal quotation marks omitted). Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness.  *Brennan*, 192 F.3d at 318; see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "we have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment").

*Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002).  In analyzing a hostile work environment claim, the Court must "assess the totality of the circumstances, considering a variety of factors, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (internal quotation marks and citation omitted).

The Amended Complaint does not allege facts that meet (or even approach) this standard. It does not supply any specific examples as to how Feliciano's work environment was hostile. Instead, it references Feliciano's other claims and states generally that defendants engaged in "various severe and hostile actions towards Plaintiff." Am. Compl. ¶¶ 79, 110. This general, conclusory allegation does not advance Feliciano's cause. And construing the Amended Complaint generously, the occurrences to which his hostile work environment claim appears to advert include, at most, (1) the change in office policies with regards to orders of protection, which limited Feliciano's responsibility, (2) the criticism Feliciano endured for failing to issue protection orders "ASAP," and (3) the change in Feliciano's duties, which added to his workload the duties normally assumed by another officer. *See* Pl. Br. 19.

These claims are a far cry from reciting a hostile work environment claim under Title VII. There is no allegation that any of these acts was motivated by Feliciano's race, national origin, or exercise of a protected activity. And the acts alleged "lack the pervasiveness, ridicule, or intimidation necessary to create a hostile work environment." *Mendez-Nouel v. Gucci Am., Inc.*, No. 10 Civ. 3388 (PAE), 2012 WL 5451189, at *10 (S.D.N.Y. Nov. 8, 2012). Because of these deficiencies, the Amended Complaint falls well short of the standard required for a hostile work environment claim to survive dismissal.

The NYCHRL, too, "is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Mihalik*, 715 F.3d at 113 (internal citations omitted); *see also Bloomberg L.P.*, 967 F. Supp. 2d at 836; *Williams*, 872 N.Y.S.2d at 39–40 (core issue in NYCHRL discrimination

claims is whether a plaintiff has been unequally treated based on his or her protected status).

Here, the Amended Complaint does not allege that the limited acts on which its hostile work

environment claim is based were discriminatory.  The NYCHRL claim therefore cannot survive.

Defendants' motion to dismiss Feliciano's hostile work environment claims is therefore granted

in its entirety.

**D.      Liability under 42 U.S.C. §§ 1981 and 1983**

As noted, Feliciano also brings claims under both §§ 1981 and 1983.  Claims of

discrimination, retaliation, and hostile work environment under these statutes match those under

Title VII.  *See Lewis v. City of Norwalk*, 562 F. App'x 25, 29 (2d Cir. 2014) (summary order)

(analyzing Title VII and § 1983 retaliation claims under the same framework); *Fincher v.*

*Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (retaliation claims under §

1981 implicate same standard as retaliation under Title VII); *Patterson v. County of Oneida*, 375

F.3d 206, 225 (2d Cir. 2004) (discrimination and hostile work environment claims implicate

same standard under § 1981 and § 1983 as under Title VII).  But to hold a defendant liable in an

individual or official capacity under these statutes, more must be shown, as explained and

applied below.

At the outset, the Court notes that because Feliciano has failed adequately to plead a

hostile work environment claim under Title VII, his §§ 1981 and 1983 hostile work environment

claims also must be dismissed.  *Patterson*, 375 F.3d at 225.  Similarly, to the extent that the

Court has narrowed Feliciano's retaliation claim based on Title VII, his §§ 1981 and 1983 claims

of retaliation must also be narrowed.

The Court first addresses Feliciano's claims under §§ 1981 and 1983 against individual defendants, and then addresses the liability under these statutes of the City and of defendants sued in their official capacities.

### 1.     Individual Liability

To hold a defendant liable in his individual capacity under §§ 1981 or 1983, a plaintiff must establish not just a substantive violation of law, but also the personal involvement of the defendant in that violation. *Patterson*, 375 F.3d at 229.  Personal involvement can be established by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Here, the Amended Complaint brings claims against Frankel, Fucito, Mulqueen, Domenech, and Sammarco in their individual capacities.  However, the Amended Complaint contains no facts specific to Frankel and Domenech, other than their job titles.  *See* Am. Compl. ¶¶ 7, 10.  Feliciano attempts to rescue these claims in his brief opposing dismissal, asserting that Domenech "made the final decision" as to which candidate would be promoted, and that Frankel, as Commissioner of the Department of Finance, failed to stop the discrimination against Feliciano.  *See* Pl. Br. 22 n.6, 23.  It is axiomatic, however, that the *Complaint* must plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and that "a party may not amend its pleadings in its briefing papers," *Maguire v. A.C. & S., Inc.*, No. 14 Civ. 7578(PAE), 2014 WL 6611748, at *4 (S.D.N.Y. Nov. 21, 2014) (quoting *Roche*

*Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 219 (S.D.N.Y. 2013)).  Because

the Amended Complaint here fails to specify the role played by Frankel and Domenech in

alleged discriminatory or retaliatory conduct towards Feliciano, the motion to dismiss is granted

as to all §§ 1981 and 1983 claims against them in their individual capacities.

As to Fucito, Mulqueen, and Sammarco, the Amended Complaint makes only generic

allegations against these defendants with respect to claims of a discriminatory failure to promote.

*See*, *e.g.*, Am. Compl. ¶¶ 82–83.  It does not allege the personal involvement of any named

individual defendant.  Mulqueen and Fucito are not identified as participants in that decision, in

any way.  As for Sammarco, he is alleged to be "one of the panelists who interview candidates

for promotion," Am. Compl. ¶ 42; however, Feliciano alleges that he was not selected for an

interview, *id.* ¶ 40, and there is no allegation that Sammarco played any role in the antecedent

decision of whom to select for an interview, the point at which Feliciano is alleged to have been

eliminated from contention.  The Amended Complaint therefore also fails to plead personal

involvement by Sammarco in any relevant act.[9]

The Court therefore dismisses the §§ 1981 and 1983 claims of national origin and racial

discrimination against Fucito, Mulqueen, and Sammarco in their individual capacities.

For similar reasons, Feliciano's §§ 1981 and 1983 retaliation claims must be dismissed:

The Amended Complaint fails to allege any personal involvement by these defendants in the sole

act of retaliation that the Court has held viable—the allegedly retaliatory failure to promote.  The

Court therefore dismisses all §§ 1981 and 1983 claims of retaliation against Fucito, Mulqueen,

and Sammarco in their individual capacities.

---

[9] As with Domenech and Frankel, Feliciano attempts to buttress these claims in his brief
opposing dismissal, but the Court cannot consider such allegations.  *See*, *e.g.*, *Weir*, 2008 WL
3363129, at *9.

### 2. Official and Municipal Liability

When the defendant sued for discrimination, retaliation, or hostile work environment under §§ 1981 and 1983 is a municipality or an individual sued in his official capacity, the plaintiff must show that the challenged acts were performed pursuant to a municipal policy or custom. *See Patterson*, 375 F.3d at 226 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36 (1989); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692–94 (1978)). The Amended Complaint never so alleges. Feliciano does argue, in his brief opposing dismissal, that the City's failure to promote him on two occasions, combined with the allegations in his two prior lawsuits, bespeak a "pattern and practice" by the City of discrimination against Hispanic employees. Pl. Br. 21. But even if the Court could consider such allegations in a legal brief, they would not state a claim because, to plead a *Monell* claim, it is insufficient to cite to past lawsuits only without elaborating on the outcome of the suits or the municipal entity's response to the claims therein. *See, e.g.*, *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22–23 (2d Cir. 2012) (summary order) (holding citation to multiple similar lawsuits predating the current claim not probative of existence of a policy or custom); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) (evidence of past claims, *together* with evidence of the City's response to those claims, was relevant).

Significantly, the Amended Complaint does not point to any evidence of a municipal policy or custom, let alone any policy or custom of engaging in acts akin to those pled here. The Court therefore grants the motion to dismiss Feliciano's §§ 1981 and 1983 claims against the City and other defendants in their official capacities.

## IV.    Conclusion

For the foregoing reasons, the Court grants the motion to dismiss the following claims in the Amended Complaint: (1) the hostile work environment claim under Title VII, the NYSHRL, and the NYCHRL; and (2) all claims brought under §§ 1981 and 1983, whether against the City or the individual defendants.  The Court narrows but does not dismiss the retaliation claim brought against the City under Title VII, the NYSHRL, and the NYCHRL.  The Court denies the motion to dismiss the discriminatory failure to promote claim.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 28.

The case will now proceed to discovery.  By July 22, 2015, the parties shall jointly submit a proposed case management plan, consistent with the Court's individual practices, *see* http://www.nysd.uscourts.gov/judge/Engelmayer, contemplating the close of fact discovery by November 23, 2015.  A next conference in the case will be held on December 18, 2015, at 9 a.m., which will function as a pre-motion conference in the event that either party has submitted a letter indicating an intention to move for summary judgment, *see* http://www.nysd.uscourts.gov/judge/Engelmayer, and which otherwise will be used to set a trial date and deadlines for the filing of pre-trial submissions.


SO ORDERED.

_Paul A. Engelmayer_
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: July 15, 2015
       New York, New York